IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| NEW SUPER CHINA BUFFET, INC., <br><br> Plaintiff, <br><br> v. <br><br> GRANGE MUTUAL CASUALTY COMPANY, a/k/a GRANGE INSURANCE COMPANY, <br><br> Defendant. | Case No.: 2:20-cv-2264 <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT

Plaintiff New Super China Buffet, Inc. ("Plaintiff" or "New Super China Buffet") brings this Complaint alleging relief against Defendant Grange Mutual Casualty Company a/k/a Grange Insurance Company ("Defendant" or "Grange") and avers as follows:

### NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising from Plaintiff's contract of insurance with Defendant.

2. In light of the Coronavirus global pandemic and state and local orders mandating that all non-essential in-store businesses must shut down on March 17, 2020, Plaintiff's restaurant has suffered business loss.

3. Plaintiff's insurance policies provide coverage for all non-excluded business losses, and thus provide coverage here.

4. As a result, Plaintiff is entitled to declaratory relief that its business is covered for all business losses that have been incurred in an amount greater than $150,000.00.

1

## JURISDICTION

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendant. Further, Plaintiff has suffered business losses in an amount greater than $150,000.00. The amount in controversy necessary for diversity jurisdiction over a declaratory judgment action is measured by the value of those business losses. *Id.* § 1332(a).

6. This Court has personal jurisdiction over Defendant Grange. Defendant's headquarters are in the state of Ohio. Defendant is subject to general personal jurisdiction of this Court.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because Defendant's principal place of business is in Ohio. Further Plaintiff's policies were drafted by Defendant in this District.

## PARTIES

8. Plaintiff New Super China Buffet owns and operates a restaurant in the State of Illinois. Plaintiff's principal place of business is 2138 W. Jefferson Street, Joliet, Illinois 60435.

9. Defendant Grange is an insurance carrier that provides business interruption insurance to Plaintiff. Grange is headquartered at 671 South High Street, Columbus, Ohio 43206.

10. At all relevant times, Defendant issued a policy to Plaintiff to cover business interruption loss from October 6, 2019 until October 6, 2020. The policy number is BP 266153804. This policy was intended to cover losses to business interruption. *See* Declaration, attached hereto as Exhibit 1 (hereinafter "Policy").

11. The Policy is currently in full effect in providing, among other things, personal property, business income and extra expense, contamination coverage, and additional coverage.

12. Plaintiff submitted a claim for a date of loss pursuant to its policy seeking coverage under this policy. Defendant rejected Plaintiff's claim for coverage for business loss and business interruption and other claims, contending, *inter alia,* that Plaintiff did not suffer physical damage to its property directly and stating other reasons why Plaintiff purportedly is not entitled to coverage for the losses and damages. Defendant also claimed the policy does not cover losses due to the Virus Exclusion Clause.

## FACTUAL BACKGROUND

### I. Insurance Coverage

13. Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

14. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary, and reasonable extra expenses incurred when access to the Insured Property is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Insured Property. This additional coverage is identified as coverage under "Civil Authority."

15. The Policy is an all-risk policy, insofar as it provides that covered causes of loss under the policy means coverage for all covered losses, including, but not limited to, direct physical loss or direct physical damage, unless the loss is specifically excluded or limited in the Policy.

16. The Policy also covers for damages resulting from business interruption when there is property damage. The exclusion for viruses does not apply to this pandemic.

17. Based on information and belief, Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown and property damage.

3

**II.     The Coronavirus Pandemic**

18.     The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the restaurant.

19.     The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited April 9, 2020).

20.     The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

21.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

22.     China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

**III.     Civil Authority**

23.     On March 9, 2020, the State of Illinois declared a disaster proclamation for the entire state of Illinois as a result of COVID-19.

24.     On March 15, 2020, the State of Illinois set restrictions on large gatherings. This order also effectively shut down all restaurants.

25. On March 20, 2020, the State of Illinois issued a stay at home order that all non-essential workers must stay at home as a result of COVID-19. This order has been extended to May 30, 2020.

26. Plaintiff's restaurant is unable to operate due to the stay-at-home orders for public safety issued by the State of Illinois. Plaintiff has submitted a claim to its insurance carrier related to such losses.

27. Further, on April 10, 2020, President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff.

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid*. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when

> they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

*See* https://youtu.be/_cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

28. The President is articulating a few core points:

   a. Business interruption is a common type of insurance.

   b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

   c. This pandemic should be covered unless there is a specific exclusion for pandemics.

   d. If insurers deny coverage, they would be acting in bad faith.

29. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

**IV. Impact on Plaintiff**

30. As a result of the Orders referenced herein, Plaintiff shut the doors to its restaurant.

31. Plaintiff's business loss occurred when the State of Illinois issued its order on March 15, 2020 closing restaurants.

32. Prior to March 15, 2020, Plaintiff was open. Plaintiff's restaurant is not a closed environment, and because people – staff, customers, community members, and others – constantly cycle in and out of the restaurant, there is an ever-present risk that the Insured Property is contaminated and would continue to be contaminated.

33. Businesses like Plaintiff's restaurant are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Property and remain viable for far longer as compared to a facility with open-air ventilation.

34. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to the property and to one another and because the nature of the restaurant and activity exposes to high level of respiratory droplets and fomites being released into the air of the property.

35. The virus is physically impacting Plaintiff. Any effort by Defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiff and the public.

36. A declaratory judgment determining that the coverage provided under the Policy exists and is necessary so as to prevent the Plaintiff from being left without vital coverage acquired to ensure the restaurant during the shutdown caused by the civil authorities' response. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## CAUSE OF ACTION

## DECLARATORY RELIEF

37. Plaintiff realleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

38. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

39. An actual controversy has arisen between Plaintiff and Defendant as to the rights, duties, responsibilities, and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, Defendant disputes and denies that:

   a. The Orders constitute a prohibition of access to Plaintiff's Insured Property;

   b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

   c. The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiff here;

   d. The Orders trigger coverage;

   e. The Policy provides coverage to Plaintiff for any current and future civil authority closures of business in Illinois due to physical loss and/or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

   f. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Property; and,

   g. Resolution of the duties, responsibilities, and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

40. Plaintiff seeks a Declaratory Judgement to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Property as Civil Authority as defined in the Policy.

41. Plaintiff further seeks a Declaratory Judgement to affirm that the Orders trigger coverage.

42. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in the State of Illinois due to physical loss or damage from the Coronavirus, and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Insured Property.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

a. For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Property.

b. For a declaration that the prohibition of access by the Orders has specifically prohibited access as defined in the Policy.

c. For a declaration that the Orders trigger coverage under the Policy.

d. For a declaration that the Policy provides coverage to Plaintiff for any current, future, and continued civil authority closures of businesses in Illinois due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

e. For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Property or the immediate area of the Plaintiff's Insured Property.

f. For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Plaintiff hereby demands trial by jury.

Dated: May 6, 2020                                  Respectfully submitted,

*/s/ Andrew S. Baker*
Andrew S. Baker, Esquire
Ohio Bar I.D. No.: 0080196
The Baker Law Group
107 South High Street
Suite 400
Columbus, OH 43215
Tel: 614-228-1882
Fax: 614-228-1862
Email: andrew.baker@bakerlawgroup.net

Robert F. Daley, Esquire
Aaron Rihn, Esquire
ROBERT PEIRCE & ASSOCIATES, P.C.
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229
Email: bdaley@peircelaw.com
           arihn@peircelaw.com

9

Arnold Levin, Esquire
Laurence Berman, Esquire
Frederick Longer, Esquire
Daniel Levin, Esquire
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
Email: alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
GOLOMB & HONIK, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
Email: rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

W. Daniel "Dee" Miles, III , Esquire
Rachel N. Boyd, Esquire
Paul W. Evans, Esquire
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiff*